WILLIAM B. HUNT V. STATE OF NEBRASKA.
11 N. W. (2d) 533

FILED OCTOBER 29, 1943.   No. 31617.

*Daniel E. Owens* and *V. H. Halligan,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Carl H. Peterson, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, CHAPPELL and WENKE, JJ.

CHAPPELL, J.

Plaintiff in error, hereinafter called defendant, was found guilty by a jury in the district court for Lincoln county, Nebraska, of the unlawful sale, transfer, and disposal of mortgaged personal property, under section 69-109, Comp. St. 1929. The trial court overruled defendant's motion for new trial and sentenced him to one year in the penitentiary, whereupon he prosecuted error to this court, contending that the information does not state an offense punishable

by the laws of the state of Nebraska because it does not allege the name of the person or body corporate to whom the mortgaged property was sold. Defendant also contends that the penalty imposed was excessive.

The record discloses that upon arraignment defendant pleaded not guilty to the information, and no objections thereto were ever made by him either before, during the trial, or thereafter, in any manner or form. His contention that the information does not state an offense is raised for the first time in the brief and oral argument to this court. Ordinarily, objections not presented to the trial court are not available on review. *Lorimer v. State,* 127 Neb. 758, 257 N. W. 217; *Green v. State,* 116 Neb. 635, 218 N. W. 432. The general rule is that a defect in the manner of charging an offense is waived if, upon being arraigned, the defendant pleads to the general issue, provided the information contains no jurisdictional defect and is sufficient to charge an offense under the law. "Accordingly the sufficiency of the * * * information * * * cannot ordinarily be determined in the first instance by the appellate court, especially where the evidence is sufficient to sustain a conviction; but, where the * * * information is fatally insufficient in that it fails to charge a crime, the objection, in the absence of a statute to the contrary, may generally be raised for the first time on appeal * * * . An indictment (or information) questioned for the first time on appeal, however, must be held sufficient, unless so defective that by no construction can it be said to charge the offense for which accused was convicted." 24 C. J. S. 271, sec. 1671. See, also, 17 C. J. 54, 55; 16 C. J. 403; *State v. O'Grady,* 137 Neb. 824, 291 N. W. 497; *Wiese v. State,* 138 Neb. 685, 294 N. W. 482; Maxwell, Criminal Procedure (2d ed.) p. 555.

The statute, section 69-109, Comp. St. 1929, provides: "Any person who, after having conveyed any article of personal property to another by mortgage, shall, during the existence of the lien or title created by such mortgage, *sell, transfer, or in any manner dispose of the said personal property, or any part thereof so mortgaged, to any person*

*or body corporate,* without first procuring the consent, in writing, of the owner and holder of the debt secured by said mortgage, to any such sale, transfer, or disposal, shall be deemed guilty of a felony, and, upon conviction thereof, shall be fined in any sum not less than one hundred dollars, or imprisoned in the penitentiary for a term not less than one year nor more than ten years, or both." (Italics supplied.)

In *State v. Butcher,* 104 Neb. 380, 177 N. W. 184, we said: "The doing of the inhibited act constitutes the crime. The statute (now section 69-109, Comp. St. 1929), was enacted to prevent the fraudulent transfer of mortgaged chattel property.

"An examination of the history of this statute to its present form clearly indicates the purpose of the legislature to be the protection of the mortgagee in his security, and to permit him to have the full value of the chattel property applied to the mortgage debt. * * * Under this statute the state makes out a *prima facie* case when it has established beyond a reasonable doubt the execution and delivery of a valid chattel mortgage, and the sale of the chattel mortgaged property during its life without the written consent of the mortgagee." See, also, *State v. Hurds,* 19 Neb. 316, 27 N. W. 139; *Fiehn v. State,* 124 Neb. 16, 245 N. W. 6.

The information in question is not claimed to be defective in any manner except for failure to name the person or corporation to whom the mortgaged property was sold.

The governing principle is that an information is fatally defective only if its allegations can be true and still not charge a crime. See *State v. Isaacson,* 155 Minn. 377, 193 N. W. 694. It is sufficient if the offense is so stated in the information as to enable the court, looking alone to the information and the verdict, to impose the sentence prescribed by law. See *State v. Perry,* 87 S. Car. 535, 70 S. E. 304.

In *McKenzie v. State,* 113 Neb. 576, 204 N. W. 60, we said: "When an information alleges all the facts or elements necessary to constitute the offense described in the statute and intended to be punished, it is sufficient."

In *Trosper v. State*, 128 Neb. 165, 258 N. W. 62, a prosecution for blackmail, where one objection was that the information contained no allegation as to the ownership of the property demanded, this court reaffirmed the above rule, and said: "The information in this case sufficiently charges a crime, the elements of which are defined by the statute. The criticism of the information is highly technical. Nobody was misled by it or misunderstood the charge made against the defendant. The technical rules of the common law are relaxed in this state. *Nichols v. State*, 109 Neb. 335. To hold this information insufficient would be to recede from our advanced position in the *Nichols* case and restore in part at least the old, cumbersome and involved form of information which served no useful purpose in the administration of justice. We are not willing to do this."

Likewise, in *Buckley v. State*, 131 Neb. 752, 269 N. W. 892, "The information in this case sufficiently charges a crime, the material elements of which are defined by statute. The objection of the defendant to the indictment filed against him is very technical. Super-technical rules in the drawing of complaints, informations and indictments have been abandoned by this court in recent years where it appears that the defendant was not misled and understood the charge against him."

The legislature long ago took cognizance of, and approved, this field of judicial construction by providing in section 29-1501, Comp. St. 1929, "No indictment shall be deemed invalid * * * for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." Also, section 29-2308, Comp. St. 1929, " * * * No judgment shall be set aside, or new trial granted, or judgment rendered, in any criminal case on the grounds * * * or for error as to any matter of pleading or procedure, if the supreme court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred."

Defendant relies exclusively upon *State v. Hughes*, 38 Neb. 366, 56 N. W. 982, an opinion written by this court on

November 21, 1893. The case is distinguishable at once from the case at bar because in the trial court defendant raised the objection that the indictment did not state facts sufficient to constitute a crime, which objection was sustained by the trial court, and, in turn, affirmed by this court. In that opinion the court pointed out and discussed other fatal defects which undoubtedly required a reversal, but, in addition, it was also said: "In an indictment for selling or transferring mortgaged personal property, it is necessary to allege the name of the person or corporation to whom such sale or transfer was made," citing as authority therefor *State v. Ruhnke*, 27 Minn. 309, 7 N. W. 264. A study of this authority discloses that the name of the purchaser appeared in the information, but it was charged, under a statute different from our own, that the sale was made with intent to defraud such named purchaser, one O'Neil, instead of the mortgagee, as required by the statute involved. Under these circumstances the Minnesota court said: "The intent to defraud the mortgagee being an indispensable ingredient of the offense, the indictment is fatally defective * * * . The intent charged is an attempt to defraud O'Neil (the purchaser) and no other person." We find the same case discussed in *State v. Blakeley*, 83 Minn. 432, 86 N. W. 419, wherein, referring specifically to *State v. Ruhnke, supra*, the court said: "In the latter case the court had under consideration G. S. 1878, c. 39, sec. 14 (See G. S. 1894, sec. 4142), and held that the fraud described in that section referred to the mortgagee. In such a case the person against whom the fraud was perpetrated must, of course, be described in the indictment." In this connection, it does not appear that *State v. Hughes, supra*, is in any manner supported by *State v. Ruhnke, supra*.

A search for authorities from other states discloses that in some jurisdictions it is necessary to state in the information the name of the purchaser of the mortgaged property, while in others no such averment is necessary. Some authorities hold that while the omission might not be a fatal defect, it is better to make the averment. See 11 C. J. 643;

14 C. J. S. 913, sec. 284 (b). The authorities are about evenly divided. The cases cited holding that it is necessary were all written between 1878 and 1893, the last of which is our own case, *State v. Hughes, supra.* Cases holding *contra* were written between 1897 and 1925. The authorities are reconcilable only by a differentiation between particular statutes and informations involved, or an evolution of the criminal law from ancient technicalities and clandestine sales to modern reality in the administration of justice by courts.

This is aptly illustrated in the case at bar by *State v. Perry, supra,* an opinion written in 1911, wherein the court said: "We do not regard it essential under the statute to name the party to whom the property was sold. This might be impossible in the case of clandestine sales, and yet the fact of sales be shown by admission of the defendant or by circumstances which fall short of the disclosure of the party to whom sold." See, also, *McClaskey v. State,* 168 Ark. 339, 270 S. W. 498, written in 1925. While this court has not yet specifically overruled *State v. Hughes, supra,* we said in *State v. Stapel,* 103 Neb. 135, 170 N. W. 665: "It is apparent that the legislature intended by this statute to protect the interests of the mortgagee by guarding against any disposal of the property without the latter's consent. In the accomplishment of this purpose it would be immaterial to whom the sale or transfer was made."

It is only logical to conclude that under our statute, the words, "sell, transfer, or in any manner dispose of the said personal property, or any part thereof so mortgaged, to any person or body corporate," of themselves import alienation or conveyance of title and ownership which could only and in any event be to some person or body corporate. Defendant could not have been misled or prejudiced in any manner by failure to name the person or corporation to whom the mortgaged property was sold or transferred. Further, in instructions No. 4 and 6 the trial court specifically and correctly told the jury, in reciting all the necessary elements of the crime, that the sale, transfer, or other

disposition, must have been to some person or corporation.

We are now of the opinion that an information charging a violation of section 69-109, Comp. St. 1929, is not fatally defective because it fails to allege the name of the person or body corporate to whom the sale or transfer was made. In so far as *State v. Hughes, supra,* conflicts herewith it is overruled.

In connection with defendant's contention that the penalty is excessive, the evidence becomes material. See Comp. St. 1929, sec. 29-2308. The record discloses that defendant, a farmer, upon failure to pay his rent as agreed, became involved in litigation with his landlord. Threatened with a loss of his crops for the year defendant gave a chattel mortgage on his almost matured corn crop to secure payment of a loan with which he profitably compromised and settled the litigation. Thereafter, during the life of the mortgage, he harvested the corn and sold it without the written consent of the mortgagee, loaner and owner of the debt, without paying any part thereof. Defendant took the witness-stand and admitted execution of the chattel mortgage, that it was entirely unpaid, and that without the written consent of the mortgagee, then the owner and holder of the debt, defendant sold a part of the mortgaged property to the Day Milling Company at North Platte, Nebraska, on December 8, 1939. He produced in court the original sale's memorandum and introduced it in evidence. Further, defendant admitted that on December 9, 1939, and again on December 22, 1939, he hauled a part of the mortgaged property to Kansas in his own truck and sold it without the written consent of the mortgagee. He produced in court the original sale's memoranda therefor and introduced them in evidence. Defendant admitted that he hauled other loads of corn and sold them, but claimed to have bought such corn on the open market with "kites", fictitious checks. Under these circumstances we do not consider the penalty excessive.

We have examined other related assignments of error and find them without merit. No error prejudicial to de-

fendant appearing in the record, the judgment of the trial court is affirmed.

AFFIRMED.

YEAGER, J., participating on briefs.