UNITED STATES of America, Appellee,

v.

Eugene W. THOMPSON, Defendant-Appellant.

No. 72-1225.

United States Court of Appeals, First Circuit.

Argued June 4, 1973.

Decided July 3, 1973.

John M. Russell, Jr., Boston, Mass., for appellant.

Terry Philip Segal, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

PER CURIAM.

Appellant, convicted in a jury trial of conspiring to distribute and of distributing narcotics, claims that he established his defense of entrapment as a matter of law and was entitled to a judgment of acquittal. Thirty-five years of age at the time of trial, he testified that he had been addicted to drugs since he was twelve years old, had served up to seven years in prison for nonnarcotics offenses, had engaged in the narcotics traffic in Boston in 1970, but had, through a methadone program, conquered his addiction in late 1970 or early 1971 and was no longer dealing in drugs when he returned to Boston at the end of the summer in 1971.

According to appellant's testimony, it was then that, after a series of repeated urgings from an old acquaintance, Bobby Clements, with whom he had engaged in drug transactions, he became involved in the three substantial sales of heroin to government agents which led to his conviction. The agents at trial described several transactions and conversations with appellant in which he had shown considerable knowledge about dealing in drugs and had discussed his interest in selling even large quantities of heroin. Clements, then working in cooperation with drug enforcement officials, served as the informer and introduced appellant to his government buyers. He was not produced at trial, the government having lost track of him.

Such a posture of a case poses a dilemma for resolution of an entrapment issue to be decided under the traditional rule reaffirmed in United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). All of the direct testimony as to inducement is likely to come from a defendant. The only other possible witness to events at this stage is apt to be the absent informer. In such circumstances we can foresee cases where the government's failure to produce its informer-inducer will be fatal to its case. This is not such a case, since even on appellant's testimony we cannot say entrapment was established as a matter of law.

Appellant described some six specific conversations with Clements over a period of five or six days, resulting in appellant's undertaking to sell heroin. In the first reunion between appellant and Clements at a bar, Clements inquired if appellant wanted to "blow a coke" and if he was selling. Appellant said he was not a user and was doing well enough in "9 to 5" jobs.* Appellant left, giving Clements his phone number, saying that Clements might give him a few pointers on playing drums. Three or four days later, they again met briefly at the same bar, there being no conversation relating to drugs. After a couple more days Clements called appellant to say that he knew some people with money who were "interested", presumably in buying drugs. Appellant said he was not in the business and told Clements not to call about such matters. The same evening Clements made another call, to the same effect, receiving the same answer.

A day later Clements became more specific, saying that appellant could make four or five thousand dollars. At this point appellant, who needed money,

---

* This response belied appellant's actual circumstances, for, as he also testified, his sign business was not doing well and he was in need of money.

said he would consider the matter, but also said he did not think he would get involved. Later that day, however, appellant met Clements at the bar, talked with him about showing a sample to the prospective buyer, and subsequently procured a sample, through a dealer with whom he had done business. Appellant's top profit in his earlier trafficking had been $500 or $550 for one sale. As he put it, when he faced a chance to make six to eight times as much, "I couldn't resist it because I needed it."

The government would have us take the position that this evidence of inducement is insufficient to shift the burden to it to disprove entrapment, citing our language in Kadis v. United States, 373 F.2d 370, 374 (1st Cir. 1967) that "a showing [of inducement] is not made simply by evidence of a solicitation. There must be some evidence tending to show unreadiness." Here, however, there were both more than "a solicitation" and some evidence tending to show unreadiness.

The government alternatively argues that it carried its burden as to predisposition. It points to appellant's past prison record and past, but recent, experience in dealing in narcotics, and his activities in planning and executing the sale of over 23 ounces of heroin on the three occasions involved in this suit, receiving $6200 for the first two and negotiating the third for $12,000. While we do not say that such evidence is irrelevant, we observe that to the extent reliance is solely placed on past involvement in factually unconnected crimes as proof of predisposition, a truly reformed former addict and dealer always has two strikes against him. See Sherman v. United States, 356 U.S. 369, 375–376, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). And to the extent reliance is placed on the evidence surrounding the drug transactions at issue, proof of predisposition often loses its identity, being merged with and satisfied by proof of distribution and sale.

The government, however, make a final point which we think is decisive. It points to the readiness exhibited by appellant, on his own testimony, in deciding to return to selling narcotics when he realized the amount of money to be made. We view the four earlier conversations between appellant and Clements as containing three exceedingly low pressure solicitations on the part of Clements. The case on predisposition is not in a posture substantially different from that which would exist had appellant been asked the first time if he were interested in making three to five thousand dollars and had, after some consideration, acceded. It is apparent that what persuaded appellant was not the repetition of Clements' urgings or of any appeals to sympathy, cf. Sherman supra, 356 U.S. at 375, 78 S.Ct. 819, but the prospect of a large profit. We do not say that accession to inducement when profit is involved is always evidence of predisposition. Obviously, when vast sums are offered, even prompt agreement might not be adverse evidence. Similarly, acceptance of an offer of lesser amounts by a complete novice would not be contrary to the entrapment defense. It is simply that in the context of past involvement posed here, the evidence of rather prompt acceptance after the first real offer of large money could be taken by the jury as an indication of the willingness of a former dealer to get back in the business once the figures were high enough.

We therefore hold that there was sufficient evidence to enable the jury to conclude beyond a reasonable doubt that appellant was not entrapped. There was no error in denying his motion for acquittal.

Affirmed.