**UNITED STATES of America,
Appellee,**

v.

**Michael L. PRINCIPE, Defendant,
Appellant.**

**No. 72–1211.**

United States Court of Appeals,
First Circuit.

Heard June 4, 1973.

Decided Aug. 6, 1973.

———◆———

A. David Mazzone, Boston, Mass., by appointment of the Court, with whom Moulton, Looney, Mazzone, Falk & Markham and Robert D. City, Boston, Mass., were on brief, for defendant-appellant.

Alan R. Hoffman, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

■ Michael L. Principe was charged in two counts of a four count indictment

with conspiring to distribute and distributing heroin in violation of 21 U.S. C. §§ 841(a)(1) and 846. After a jury trial in which his sole defense was entrapment, the defendant was acquitted on the conspiracy count but convicted of the substantive offense. Principe appeals, arguing that the evidence produced at trial established his defense of entrapment as a matter of law. We disagree, and accordingly affirm the judgment below.[1]

Briefly, appellant's version of his involvement in the narcotics transaction here in question was as follows. In September 1971 appellant, a 20-year old heroin addict of four years standing who had bought heroin "hundreds of times," entered an out-patient clinic at the Cambridge City Hospital in an effort to cure himself of his drug habit. Thereafter, he continued to use both methadone and, on a reduced basis heroin—the latter until Christmas 1971. (The offense in question was on November 29, 1971, and appellant was indicted on December 16, 1971.) Also enrolled in the methadone program during the fall of 1971 was a close friend of appellant, Bruce Saunders. Appellant had met Saunders early in 1970, seeing him daily thereafter. Saunders was a dealer in heroin from whom appellant had made regular purchases until September 1971. Unbeknown to Principe, Saunders by the fall of 1971 had become an informer for the Bureau of Narcotics and Dangerous Drugs, having been pressured into this role by promises of consideration in criminal proceedings pending against him. On November 12, 1971, Saunders approached Principe at a "rap session" at the clinic and asked appellant whether he could help him to obtain some heroin.

Although Principe initially turned down this request, Saunders continued to press the matter insistently during daily conversations over a period of more than two weeks. Principe testified that Saunders eventually overcame his reluctance to engage in a drug transaction by telling him that he (Saunders) had recently been indicted on a criminal charge and needed to sell some heroin in order to raise bail money. According to Principe, Saunders professed to be greatly concerned about the fate of his wife and child if he were incarcerated, and also stated that he wanted some heroin because his wife, an addict, was suffering from withdrawal sickness. On November 28 appellant finally yielded to these entreaties and agreed to set up a heroin transaction between Saunders and a third party. At a subsequent meeting the next day, arranged and attended by Principe, one James Hill sold an ounce of heroin to two federal agents, whom appellant supposedly thought to be Saunders' financial backers. Appellant testified to having first met the parties to whom he introduced the agents several months earlier. From them he had that fall made four heroin purchases for himself and friends, the last of these taking place at the end of October or the beginning of November 1971.

Since the government did not call Saunders as a witness, there was no direct contradiction of the story thus related by Principe. Nevertheless, the testimony of the federal agents concerning their dealings with the appellant was circumstantially inconsistent with the idea that he had been merely complaisantly involved in the above drug sale. During his initial telephone contact with

---

1. We note initially that appellant did not move for a judgment of acquittal on the ground of entrapment at the close of the evidence in the court below. Ordinarily, the court will not consider the sufficiency of the evidence to sustain a criminal conviction in the absence of such a motion, except to avoid manifest injustice. *See, e. g.*, Hardwick v. United States, 296 F.

2d 24 (9th Cir. 1961); McDonough v. United States, 248 F.2d 725 (8th Cir. 1957); Malatkofski v. United States, 179 F.2d 905 (1st Cir. 1950). Since we find that the government sustained its burden on the issue of predisposition in the present case, however, we prefer not to rest our decision on this ground alone.

the agents, for example, Principe told Agent Lemon that the heroin he was about to purchase could be "hit" (diluted) seven times, and also demanded a commission of sixty dollars for arranging the sale after the agent had originally offered him twenty-five. The subject of Principe's commission was again raised by the appellant just before the transaction took place, when he complained that the agents stood to make more than twenty times their investment on the deal and should therefore be willing to offer him more money. Agent Lemon also testified to a conversation between Principe and a codefendant in which the latter allegedly stated that he could get hold of a pound of cocaine for $9,000, and Principe asked if it would be possible for him to sell some of the cocaine. Furthermore, when the agents and Principe returned to their car after completing the heroin transaction, appellant once again increased his commission demand, this time to $100. After Agent Lemon had agreed to pay this amount, Principe told the agents that they could have made a substantial saving by doing the transaction his way. Appellant also described the roles of various other persons in the narcotics business, and asked Agent Lemon if it would be possible for him to participate with Lemon as a seller of the latter's heroin in future transactions.

On the above evidence, we think that the issue of entrapment was for the jury. Concededly, if Saunders engaged in the conduct described by appellant, it reflected no great credit on the government, whose agent he had become. He employed repeated and highly emotional appeals to, in essence, set up a close friend (although his efforts led to the detection of a supplier and several participants in a business the continuation of which threatens the lives and well-being of untold numbers). Since Principe's testimony was sufficient to meet his initial burden under Kadis v. United States, 373 F.2d 370 (1st Cir. 1967), we need not decide, in light of the government's failure to call its informer as a witness, whether the jury could have wholly discredited appellant's story as to the circumstances of inducement. See United States v. Thompson, 481 F.2d 650 (1st Cir. 1973). Nevertheless, under the traditional view of entrapment recently reaffirmed in United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), the ultimate focus of concern is not on the law enforcement techniques employed by the government, however questionable these may be, but rather on the defendant's own "predisposition" to commit the crime.

Thus, where it can be established that a defendant engaged in illegal activity as a result of his own preexisting readiness to do so, it becomes virtually irrelevant that the government's blandishments might have been sufficient to induce some hypothetically innocent person to commit the same criminal acts. Accepting Principe's version of Saunders' conduct as basically accurate, we nevertheless think that the evidence amply warranted an inference that it was appellant's predisposition, and not the number and content of the informer's urgings, which motivated his criminal actions. As noted above, the appellant testified to using heroin regularly, hence illegally obtaining it, throughout the fall of 1971. While he denied selling or distributing except on the one occasion in question, there was evidence from which the jury could have inferred that notwithstanding his enrollment in the methadone program, he remained very much involved in the procuring and use of heroin, both for himself and on behalf of friends for or with whom he testified to participating in joint buys. The federal agents testified that Principe energetically bargained with them concerning the amount of his commission, and that he also actively sought new opportunities to involve himself in the sale of narcotic drugs. This is hardly the conduct which one would expect from an "unwary innocent" entrapped into arranging a single sale of heroin by the insistent appeals of a false friend. Compare Sherman v. United States, 356

U.S. 369, 375–376, 78 S.Ct. 819, 2 L.Ed. 2d 848 (1958). Moreover, there was testimony from one of Principe's codefendants that the appellant had contacted him about arranging a heroin transaction approximately one week before the sale actually took place. This testimony would tend to contradict appellant's assertion that he persistently rejected Saunders' requests until November 28. We think that the above evidence, viewed in the light most favorable to the government, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), was sufficient to allow the jury to conclude beyond a reasonable doubt that appellant was not entrapped.[2]

■ Appellant also claims that the district court erred in denying his motion for judgment of acquittal after the jury had returned a verdict of not guilty on the conspiracy court. This contention is based on the theory that the jury's verdict on the conspiracy charge constituted a determination of the entrapment issue in appellant's favor, thus entitling him to acquittal on the substantive count as well. This argument is completely without merit. On the evidence here presented the jury could, with perfect logic, have concluded (1) that appellant aided and abetted the sale of heroin here in question; (2) that he was not entrapped into so doing; and (3) that the government had nevertheless failed to establish his membership in the continuing conspiracy alleged in the indictment. The jury verdicts were not inconsistent. *See* Ottomano v. United States, 468 F.2d 269 (1st Cir. 1972), cert. denied, 409 U.S. 1128, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973).

Affirmed.

2. Principe argues that the government should be subjected to a more stringent burden on the issue of predisposition in this case on the theory that, because he was undergoing heroin withdrawal and methadone treatment at the times in question, he could not "form a predisposition" to commit the offense. We view this argument as being exactly equivalent to a contention that the defendant lacked the necessary *mens rea* to be held criminally responsible for his acts. Since this issue was not raised in any manner in the court below, we will not consider it here. *Cf.* United States v. Bishop, 469 F.2d 1337, 1346 (1st Cir. 1972).