STATE OF NEBRASKA, APPELLEE, V. ROBERT W. PEARSON,
APPELLANT.
368 N.W.2d 804

Filed June 7, 1985. No. 84-584.

Kirk E. Naylor, Jr., for appellant.

Paul L. Douglas, Attorney General, and Mel Kammerlohr, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

Following the affirmance by this court of defendant's conviction for the felony offense of delivering cocaine, *State v. Pearson*, 215 Neb. 339, 338 N.W.2d 445 (1983), he filed a motion for post conviction relief, alleging ineffective assistance of counsel. That motion was denied and he has appealed. We affirm.

As stated in *State v. Pearson, supra*:

> Critical to the conviction of the defendant were two tape recordings of telephone conversations between the defendant and Paul R. Wagner, supervisor with the State Patrol drug division. Wagner testified in substance that he was acquainted with the defendant; that during the 3 or 4 months preceding the calls in question he had approximately 20 phone conversations and 6 personal meetings with the defendant . . . .

*Id*. at 340, 338 N.W.2d 445-46.

It was the defendant's contention that from the inception of the prosecution, trial defense counsel had told defendant and his family that his only viable defense was entrapment. In his opening statement to the jury, defense counsel argued that the defendant was badgered and harassed by the law enforcement officials and that he had no intent to deliver anything, but was entrapped by the particular officer. A similar argument was made in his closing statement.

Defendant further insists that although the evidence supported the giving of a jury instruction on entrapment, none was requested by defense counsel, and, by inference at least, we conclude that none was given by the trial court.

According to defense counsel's deposition testimony, he did not request an entrapment instruction because, in his opinion, it was not necessary and there was the possibility that the court would not have allowed it due to the fact that he did not feel the court believed the defendant's testimony. He came to this conclusion even though he realized the court, the judge, was not the trier of fact in the case.

A defendant in a criminal action is not only entitled to counsel but to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 90 S. Ct. 1441, 25 L. Ed. 2d 763

(1970). The standard for determining whether an attorney adequately represented a criminal defendant is whether the attorney, in representing the accused, performed at least as well as a lawyer with ordinary training and skill in the criminal law in the area. He is also required to conscientiously protect the interests of the client. *State v. Hochstein*, 216 Neb. 515, 344 N.W.2d 469 (1984).

The burden to prove such ineffectiveness is upon the person challenging the competency of counsel. The record must affirmatively support a claim of ineffective assistance of counsel, and the assistance is not to be judged by hindsight. *State v. Hochstein, supra.*

In order to successfully attack a conviction because of ineffective assistance of counsel, it is necessary that the defendant prove that prejudice resulted to him because of such ineffectiveness. It is not sufficient for the defendant to show that the deficiency of counsel had some conceivable effect on the outcome of the proceeding. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Finally, as a preliminary rule, we must remember that in a proceeding for post conviction relief, the findings of the trial court will not be disturbed on appeal unless clearly erroneous. *State v. Hochstein, supra.*

In light of the foregoing rules it is necessary to examine the record to determine whether it would have supported the giving of an instruction on entrapment.

In order to substantiate the defense of entrapment, it must be shown that the government induced the defendant to commit the crime charged and that defendant's predisposition to commit the crime was such that defendant was not otherwise ready and willing to commit the offense on any propitious opportunity. *State v. Swenson*, 217 Neb. 820, 352 N.W.2d 149 (1984).

In *Swenson, supra*, we said:

> In order to submit the defense of entrapment to the jury, a defendant's evidence of entrapment must be "more than a

scintilla." [Citations omitted.] To be more than a scintilla, evidence cannot be vague, conjectural, or the mere suspicion about the existence of a fact, but must be real and of such quality as to induce conviction. . . .

. . . .

. . . An undercover police officer's merely affording the defendant a favorable opportunity for commission of a crime already conceptualized in the accused is not entrapment.

*Id*. at 824-25, 352 N.W.2d at 153.

Officer Wagner testified that he met the defendant in April of 1982 and from that time until August 17 had had approximately 20 phone conversations and 6 face-to-face meetings with Pearson. It was the August 16 phone conversation that set up the August 17 drug delivery.

The August 17 delivery was actually made by the defendant. Wagner testified that during the course of that conversation, defendant offered to deliver more of the cocaine that evening at 120th and L Streets in Omaha because he had to make another delivery that night.

During cross-examination, Wagner denied that defendant ever told him that he did not want to do business with him; he admitted that defendant was naive in the way he went about his business; but nevertheless he insisted that defendant had a great deal of knowledge as far as the drug activities were concerned.

As part of the State's case, recordings of certain telephone conversations between the defendant and Wagner were played to the jury. These calls were made on June 24, July 26, 27, and August 16 and 17. During these calls, defendant told Wagner he was getting into the "toot" business and had a new connection that had been fronting it out for him. Pearson told Wagner he was able to get some additional drugs. Defendant volunteered to try to get Wagner 1 or 2 ounces of cocaine for $2,100 per ounce.

Against this rather overwhelming evidence of defendant's apparent willingness, even eagerness, to engage in drug trafficking is the testimony of the defendant himself.

Pearson testified that after meeting Wagner in April the officer called him constantly, wanting to buy drugs. His reply

was always that he was not selling drugs but his roommate was. Pearson claimed he received at least 10, possibly 15, phone calls wanting him to sell 5 pounds of marijuana, which he said he could not do. Defendant insisted he told the officer four or five times he was not involved personally and that he would have to talk to his roommate.

Pearson's explanation as to why he made the responses he did during the recorded calls, offering to sell drugs, was that he was "[j]ust talking big. . . . just talking out of my ears. To think I was a big shot." He said that after he had received six or seven calls, he decided to arrange the sale on August 17 as a favor to his roommate. He said he did not have any intent to sell or deliver drugs until "this guy kept calling me . . . I was scared of him. I didn't know what to do."

Pearson claimed his roommate would not sell Wagner any drugs, but told him, Pearson, to do it, "[s]o, I did it as a favor for him . . . ." He said he would not have delivered any drugs if the party had not constantly called him and that he never had any intent to deliver drugs in the first place "except for him just calling me." Defendant explained his offer to give Wagner a better price if he would buy more of a quantity was that he was just blowing smoke, "talking big, which I have done before."

According to defendant's trial counsel, he abandoned the entrapment theory of defense and relied on a lack of intent to commit the crime as being the stronger defense.

It is the duty of the trial court, upon request of the accused, to instruct the jury upon any valid defense if there is credible evidence to support it. *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984). Failure to request such a jury instruction may constitute ineffective assistance of counsel, *Grooms v. State*, 320 N.W.2d 149 (S.D. 1982), *Corsa v. Anderson*, 443 F. Supp. 176 (E.D. Mich. 1977), which may require the granting of relief only if it appears that the defendant was prejudiced by counsel's conduct, *McNulty v. Olim*, 488 F. Supp. 1384 (D. Hawaii 1980).

Stated another way, in order to be entitled to relief under such circumstances, the defendant must show that there is a reasonable probability that but for counsel's ineffective assistance, the result of the proceeding would have been

different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Did the record support the giving of an instruction on entrapment? The defense of entrapment is comprised of two essential elements: (1) The defendant must not have been predisposed to commit the crime; and (2) The defendant must have been improperly induced by law enforcement officers to commit the crime. *State v. Parks,* 212 Neb. 635, 324 N.W.2d 673 (1982). If the defendant has submitted more than a scintilla of evidence tending to prove entrapment, the question of entrapment then becomes one of fact to be decided by the jury. *State v. Parks, supra.*

At best, defendant made a conclusory statement that he would not have delivered any drugs in the first place except for Wagner's constant calls. His explanation that he was "blowing smoke," talking big, or making the sale as a favor to his roommate does not establish that he was not predisposed to commit the crime or that he was improperly induced by law enforcement officers to do so.

We do not believe there was more than a scintilla of credible evidence to support a defense of entrapment. At most, his testimony went to the matter of lack of intent, which was what the defense counsel argued. Post conviction relief was properly denied. The judgment of the district court is affirmed.

AFFIRMED.