STATE OF NEBRASKA, APPELLEE, V. DAVID W. JONES, APPELLANT.

435 N.W.2d 167

Filed January 27, 1989.   No. 88-006.

Charles F. Fitzke, Scotts Bluff County Public Defender, and Rae Ann Schmitz for appellant.

Robert M. Spire, Attorney General, and Susan M. Ugai for appellee.

HASTINGS, C.J., WHITE, and FAHRNBRUCH, JJ., and FUHRMAN and WHITEHEAD, D. JJ.

WHITE, J.

This is a criminal case. Defendant appeals from a conviction from Scotts Bluff County. The appellant, David W. Jones, was found guilty of intentionally delivering cocaine, a Class II

felony, and sentenced to an indeterminate term of $2^{1}/_{2}$ to 3 years at hard labor in the Nebraska Penal and Correctional Complex in Lincoln, Nebraska. The defendant assigns as error the failure of the trial court to grant the defendant's directed verdict motion at the close of the evidence, the failure of the court to grant the motion of the defendant to compel the attendance of out-of-state witnesses, and the refusal of the trial court to give an instruction on the defense of entrapment. After a brief review of the facts precipitating the defendant's arrest, we will address each of these contentions in detail.

Connie R. Aguallo was a paid cooperating individual who volunteered to assist the Nebraska State Patrol and the Scottsbluff Police Department in apprehending drug offenders. Aguallo had compiled a list of people she knew to have drug connections in the community. On May 6, 1987, Aguallo was searched by an officer of the department and wired with a transmitter. She was then given $350 to purchase drugs. She proceeded to the home of Arnold O'Leary and Jeanettia Gray. Aguallo found only Gray at home and asked her if she could get Aguallo some cocaine. Gray responded that she did not have any drugs for sale but knew where she could get some.

The two women got into Aguallo's car and proceeded to 1614 Third Avenue in Scottsbluff. Gray went to the door and returned to the car with a tall man later identified as the appellant, Jones. The appellant entered the car and the three rode to Gray's house to change cars. They entered Gray's car and traveled to the corner of 15th Avenue and 15th Street in Scottsbluff.

While in the vehicle, Aguallo told the appellant that she wished to purchase an 8-ball of cocaine: approximately 3 grams. The appellant told her the cost would be $350, but Aguallo and the appellant finally negotiated a price of $340. Gray and Aguallo then dropped the appellant off and waited for approximately an hour.

The appellant returned to the vehicle with a baggie containing a white powdery substance later analyzed to be cocaine. He asked Aguallo for a line and took a small amount out of the baggie for himself. He then turned the rest of the bag

over to Aguallo. Aguallo placed the baggie in her pocket and returned to her vehicle at Gray's house.

Aguallo turned the baggie of cocaine over to the state patrol. At trial, Detective Mark Overman of the Scottsbluff Police Department identified the individual making the sale of cocaine as the appellant. After being granted immunity from prosecution, Gray also identified the appellant as the individual who procured the drug.

The appellant contends that he was in Newport News, Virginia, from February 18 through July 4, 1987. Sandra Renteria, John Gier, Benjamin Dean, and Donald Williams all testified in support of this assertion. However, on November 4, 1987, the jury returned a verdict of guilty.

The appellant first argues that the trial court was in error in overruling the defense motion for a directed verdict at the close of the appellant's case. This motion was based on the appellant's alleged absence from the State of Nebraska at the time of the commission of the offense, and the appellant contends that the doctrine of *State v. Hunt*, 224 Neb. 594, 399 N.W.2d 806 (1987), controls here, as the testimony against the defendant was of such doubtful character that a conviction based on such evidence cannot be sustained. This contention is without merit. In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged, or evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Katzman*, 228 Neb. 851, 424 N.W.2d 852 (1988).

In the present case, as evidenced by the facts outlined above, sufficient evidence existed to establish the essential elements of the crime charged. In addition, the evidence was sufficiently reliable to support a finding of guilt. At trial, Detective Overman, Aguallo, and Gray all specifically identified the appellant as the individual making the sale of cocaine. Although the defendant presented witnesses to support his contention that he was not present in the state at the time of the offense, there was sufficient evidence to support the State's theory that the appellant was present, and to submit the identification issue to the jury.

In his second assignment of error, the appellant argues that the trial court improperly excluded witnesses who, he asserts, were necessary in his defense, in violation of his sixth amendment right to compulsory process. See *State v. Cain*, 223 Neb. 796, 393 N.W.2d 727 (1986). This assignment of error is also meritless.

Appellant produced a list of potential witnesses on October 29, 1987, 4 days before the trial was scheduled to begin. On September 28, the matter had been set for trial, and discovery and pretrial motions had been ordered at that time. Because of this delay in producing a list of potential witnesses, the trial court found that the motion for attendance of out-of-state witnesses was untimely and without merit. These proposed witnesses were expected to testify that the appellant was in Newport News, Virginia, on May 6, the date of the alleged offense. The delay in producing a list of potential witnesses made it virtually impossible to comply with the requirements of Neb. Rev. Stat. §§ 29-1903 and 29-1908 (Reissue 1985) to subpoena the witnesses prior to trial.

Further, "the defendant must at least make some plausible showing of how an absent witness' testimony would have been both material and favorable to his defense." *State v. Cain, supra* at 802, 393 N.W.2d at 731-32. "The constitutional right to compulsory process requires process only for competent and material witnesses." *Id*. at 802, 393 N.W.2d at 732. At trial, both the appellant and Renteria testified to the effect that the appellant was in Newport News, Virginia, at the time of the offense. Additionally, three other witnesses testified in support of this assertion on the appellant's behalf. Additional testimony would merely have been cumulative. " '[I]t is only where the trial court excludes relevant evidence without sufficient justification that a defendant's right to compulsory process is violated.' " *Id*., citing *United States v. Bernhardt*, 642 F.2d 251 (8th Cir. 1981). In this action, because the evidence sought to be introduced through these witnesses was cumulative, the appellant's right to compulsory process was not violated.

In his last assignment of error, the appellant challenges the trial court's denial of his requested jury instruction on the theory of entrapment. Entrapment is the governmental

inducement of one to commit a crime not contemplated by the individual, in order to prosecute that individual for the commission of a criminal offense. *State v. Swenson*, 217 Neb. 820, 352 N.W.2d 149 (1984). This court has held that "[w]here a person has no previous intent or purpose to violate the law, but does so only because he is induced to commit the act by law enforcement officers or agents, he is entitled to the defense of entrapment." *State v. Lampone*, 205 Neb. 325, 328, 287 N.W.2d 442, 444 (1980).

In Nebraska, the "origin of intent" test is the test utilized to determine whether the defendant committed the offense because of entrapment. *State v. Swenson, supra*; *State v. Lampone, supra*; *State v. Smith*, 187 Neb. 511, 192 N.W.2d 158 (1971). Under the "origin of intent" test, entrapment consists of two elements: (1) The government has induced the defendant to commit the offense charged; and (2) the defendant's predisposition to commit the criminal act was such that the defendant was not otherwise ready and willing to commit the offense on any propitious opportunity. *State v. Swenson, supra*.

The State has the burden to prove beyond a reasonable doubt that the defendant was not entrapped. In the present action the agent of the government, Aguallo, approached Gray and asked her if she had any cocaine. Gray responded in the negative, but stated she knew where she could get some. Gray then approached the appellant regarding obtaining some cocaine for Aguallo. Gray was never an agent of the government. Because no agent of the government ever directly approached the appellant, it is difficult to imagine how the appellant can now be claiming that he was entrapped by the actions of the government.

> [E]ntrapment is condemned on account of some misuse of power or impropriety by the state charged with protecting against, not promoting, criminal activity. By injecting a criminal intent where none existed in an individual, the state becomes an instigator of and an accomplice in the activity prohibited by the state's criminal code. In such cases the real culprit is the state rather than the individual accused of violating state law.

*State v. Swenson, supra* at 823, 352 N.W.2d at 152. In the present case, the State did not solicit the participation of the appellant in any criminal scheme. Instead, Gray approached the appellant, and he readily participated in the criminal enterprise. Because of the lack of governmental involvement, it is not necessary to determine whether any of the other elements of the defense of entrapment were met. The trial court was correct in refusing to instruct the jury on the defense of entrapment.

All of the assignments of error being without merit, the judgment of the district court is therefore affirmed.

AFFIRMED.